IN THE UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF GEORGIA
AUGUSTA DIVISION

WILLIAM ANDREW RIVELL, M.D.,    *
and ALAN B. WHITEHOUSE, M.D.,   *
individually and on behalf of   *
all other persons similarly     *
situated,                       *     CIVIL ACTION NO.
                                *     CV 106-176
    Plaintiffs,                 *
                                *
    vs.                         *
                                *
PRIVATE HEALTHCARE SYSTEMS,     *
INC. and THE CAPELLA GROUP,     *
INC. d/b/a CARE ENTREE          *
                                *
    Defendants.                 *

---

**O R D E R**

---

In the captioned matter, Defendants have filed motions to dismiss Plaintiffs' amended complaint. Based upon the relevant law, the parties' briefs, and oral argument conducted on March 13, 2007, Defendants' motions to dismiss are **GRANTED**.

**I. FACTUAL BACKGROUND**

In this putative class action suit, Plaintiffs William Andrew Rivell, M.D., and Alan B. Whitehouse, M.D., are physicians in Georgia. (Am. Compl., ¶ 4.) These physicians, like many other health care providers, enter into agreements either individually or through a physician practice group

called "Network Agreements." These Network Agreements are intended to facilitate doctor participation in larger provider networks available through preferred provider organizations ("PPOs") that offer Health Plans under which the costs of medical care are paid. (Id. ¶ 14.) Generally, the health care providers who enter these Network Agreements agree to provide discounts for specific medical services based on an agreed fee schedule. In exchange, the customers of the PPO agree to direct or steer their enrollees or participants to providers within its PPO network. (Id. ¶ 13.) Thus, the health care providers are promising discounted fees in exchange for the potential of providing services to a higher volume of patients. (Id.)

Defendant Private Healthcare Systems, Inc. ("PHCS") manages and operates a PPO of health care providers of which the named Plaintiffs are a part through their Network Agreements. Typically, the Network Agreements permit a PPO to sell, rent or lease provider discounts to insurance companies and other entities ("Payors"), who have contracted to pay the medical claims of covered persons. (Id. ¶ 14.)

Defendant The Capella Group, Inc. d/b/a Care Entree ("Capella") offers medical savings program services through the issuance of Medical Discount Cards. Plaintiffs refer to Capella as a discount card company or DCC. (Id. ¶ 15.) The

Medical Discount Cards allow non-insured consumers, i.e., consumers who are not a part of a Health Plan, to access established networks of discounts from medical service providers. (Id.)

At some point, Capella entered into a contract with PHCS whereby PHCS gave Capella access to the network of medical providers it created and owned to include the named Plaintiffs. (Id. ¶ 17.) Unlike the usual customers of PHCS, such as health insurance companies and other entities who contract to pay the costs of a person's medical care, Capella is a "Non-Payor" in that it pays no portion of the costs of medical care.

Plaintiffs assert that their Network Agreements have been unlawfully sold, rented or leased to Capella; more specifically, Plaintiffs claim that PHCS's sale or lease of their Network Agreements to Capella allowed Capella to access and use their identities, discount rates and practice information to market and sell Medical Discount Cards without their authorization.

On November 17, 2006, Plaintiffs filed this putative class action. Their complaint was amended on December 20, 2006, in order to add a tort claim for the appropriation of Plaintiffs' names for financial gain. In January of 2007, both Defendants filed a motion to dismiss the amended

complaint. Plaintiff thereafter filed a motion for class certification. The Court heard oral argument from the parties on March 13, 2007, in which the motions to dismiss and related procedural matters were addressed. The Court rules on these issues as follows.

## II. LEGAL STANDARD ON A MOTION TO DISMISS

Defendants argue that the allegations in Plaintiffs' amended complaint fail to state a claim upon which relief may be granted pursuant to Federal Rule of Civil Procedure 12(b)(6).

"In essence, a [Rule 12(b)(6)] movant says, 'Even if everything you allege is true, the law affords you no relief.'" Johnson v. Fleet Finance, Inc., 785 F. Supp. 1003, 1005 (S.D. Ga. 1992). In deciding a motion to dismiss under Rule 12(b)(6), the non-movant's factual allegations are presumed true and all reasonable inferences must be construed in the light most favorable to the non-movant. See Miree v. DeKalb County, Ga., 433 U.S. 25, 27 n.2 (1977); Powell v. Lennon, 914 F.2d 1459, 1463 (11th Cir. 1990).

Of note in this case, "[i]n deciding a motion to dismiss, a court may only examine the four corners of the complaint and not matters outside the complaint without converting the motion to dismiss to a motion for summary judgment."

4

Caravello v. American Airlines, Inc., 315 F. Supp. 2d 1346, 1348 (S.D. Fla. 2004); see also Jones v. Automobile Ins. Co. of Hartford, Conn., 917 F.2d 1528, 1532 (11th Cir. 1990).

Defendant Capella has attached to its reply brief a copy of an agreement between PHCS and a network of physicians of which Plaintiffs are presumably a part (i.e., University Physicians Associates, Inc.) and a copy of an agreement between PHCS and Plaintiff Rivell.[1] Thus, before turning to the merits of Defendants' arguments, the Court must assess whether consideration of these Network Agreements would necessitate conversion of Defendants' motions into motions for summary judgment. See Fed. R. Civ. P. 12(b)(6).

It would not. "[T]he [C]ourt may consider a document attached to a motion to dismiss without converting the motion into one for summary judgment if the attached document is (1) central to the plaintiff's claim and (2) undisputed."[2] Day v. Taylor, 400 F.3d 1272, 1276 (11th Cir. 2005)(citing Horsley v. Feldt, 1125, 1134 (11th Cir. 2002)). Thus, "a document need not be physically attached to a pleading to be incorporated by

---

[1] Capella also attached a copy of an agreement between PHCS and Capella called a "Subscriber Services Agreement." This document was not used in any way in consideration of the motions to dismiss. For proprietary reasons, all of the referenced documents remain under seal with the Clerk of Court.

[2] "In this context, 'undisputed' means that the authenticity of the document is not challenged." Day, 400 F.3d at 1276 (citing Horsley, 304 F.3d at 1134).

5

reference into it; if the document's contents are alleged in a complaint and no party questions those contents, [the Court] may consider such a document provided it [is central to the plaintiff's claim]." Day, 400 F.3d at 1276. As shall be further explained herein, such is the case here. Accordingly, the merits of Defendants' arguments will now be addressed.

### III. ONE-WAY INTERVENTION

Plaintiffs have filed a motion for class certification in the case. In doing so, Plaintiffs argue that such motion precludes a ruling on Defendants' motions to dismiss based on the "one-way intervention" principle.

"'One-way intervention' involves the problem of allowing putative class members to sit on the sidelines while the merits of a class action are decided before the class itself is certified. The result is that putative class members can simply observe the proceedings without assuming any risk that their individual claims may be precluded by an adverse ruling on the merits." Newton v. Southern Wood Piedmont Co., 163 F.R.D. 625, 630 (S.D. Ga. 1995). When considering the propriety of a class action, a court should focus on the requirements of Rule 23 and not whether the plaintiffs have stated a cause of action or will prevail on the merits. Id. A court should be mindful to prevent the possibility of one-

way intervention when faced with a dispositive motion prior to consideration of a certification motion. In accordance with this principle, courts will generally not reach the merits of a case on a dispositive motion prior to deciding whether the class should be certified.

The possibility of one-way intervention, however, does not mandate the deferral of a dispositive motion. In fact, many courts have considered dispositive motions before class certification motions. See, e.g., Telfair v. First Union Mortgage Corp., 216 F.3d 1333, 1343 (11th Cir. 2000); Thompson v. County of Medina, Ohio, 29 F.3d 238, 241 (6th Cir. 1994); Floyd v. Bowen, 833 F.2d 529, 534-35 (5th Cir. 1987); Smith v. Network Solutions, Inc., 135 F. Supp. 2d 1159, 1165-66 (N.D. Ala. 2001) (noting that where defendants are willing to assume the risk of further litigation from putative class members, a court could rule on a dispositive motion). Moreover, one-way intervention is conceived as a protection for *defendants*. See Thornton v. Mercantile Stores Co., 13 F. Supp. 2d 1282, 1289 (M.D. Ala. 1998) (noting that defendants are free to waive the potential prejudice to themselves of one-way intervention). In this case, Defendants expressly waive any invocation on such protection. In any event, considering the fact that this Court has been called upon to assess the very nature of Plaintiffs' claims, a class could not be certified without

first addressing the merits of the motions to dismiss. Otherwise, it would not be clear what causes of action are being certified. Accordingly, the motion for class certification must await a decision on Defendants' motions to dismiss.

## IV. DEFENDANTS' MOTIONS TO DISMISS

In describing their lawsuit, Plaintiffs state that they have "assert[ed] equitable and legal claims based on the defendants' unauthorized use of plaintiffs' names, provider discounts and related information about their medical practices obtained from physician network agreements, to market and sell medical discount cards purporting to provide consumers with discounts on plaintiffs' medical services." (Pls.' Brf. Supp. Mot. for Class Cert., at 3.)

At first glance then it would seem that Plaintiffs are asserting a cause of action based upon the Network Agreements that they have with PHCS. That is, Plaintiffs allege that PHCS overstepped its authority under the terms of the Network Agreements. Plaintiffs, however, specifically deny that they have asserted a contract claim.[1] Instead, they claim their case sounds in tort.

---

[1] Plaintiffs also deny any claim under the Fair Business Practices Act, O.C.G.A. §§ 10-1-390 et seq., which is cited in Paragraph 18 of the Amended Complaint.

8

In Count IV, Plaintiffs cite to O.C.G.A. § 51-1-8[2] to assert a tort for the "Unauthorized Lease or Sale of Plaintiffs' Network Agreements and Provider Information." Section 51-1-8 states: "Private duties may arise from statute or from relations created by contract, express or implied. The violation of a private duty, accompanied by damage, shall give a right of action." Thus, under Georgia law, a contractual relationship may give rise to a duty which exceeds the bounds of the contract itself.[3]

This principle of law was explained in <u>Howard v. Central of Georgia Railway Company</u>, 9 Ga. App. 617, 71 S.E. 1017 (1911): "[I]f the result of a contract is to create a relationship between the parties, and there are certain duties which the law attaches to that relationship, the breach of one of these duties may give rise to an action in tort." In <u>Howard</u>, the contract was between a railroad company and a

---

[2] Plaintiffs also cite O.C.G.A. § 51-1-6, which provides: "When the law requires a person to perform an act for the benefit of another or to refrain from doing an act which may injure another, although no cause of action is given in express terms, the injured party may recover for the breach of such legal duty if he suffers damage thereby." Section 51-1-6 does not create a cause of action however. Instead, it authorizes a right of recovery for the breach of a legal duty created elsewhere, either by statute or otherwise. <u>City of Buford v. Ward</u>, 212 Ga. App. 752, 755, 443 S.E.2d 279, 283 (1994). Thus, unless it can be said that a duty existed between Plaintiffs and Defendants, which is discussed <u>infra</u>, Plaintiffs cannot state a claim under § 51-1-6.

[3] In this case, Plaintiffs have not alleged that any statute created a duty.

9

passenger for transportation on one of its lines. The court recognized that the contract created the relationship of carrier and passenger, and the law attaches to that relationship certain duties. Thus, the carrier's neglect of one of those duties gave rise to a cause of action in tort. Id. at 619, 71 S.E. at 1017.

That is not to say that every contract creates such a relationship or that the breach of every contract gives rise to a cause of action in tort. As explained by one court, some of the relationships created by contract that may give rise to a duty are principal and agent, bailor and bailee, attorney and client, physician and patient, carrier and passenger or shipper, master and servant, and engineer and client. Kaiser Aluminum & Chemical Corp. v. Ingersoll-Rand Co., 519 F. Supp. 60, 69 (S.D. Ga. 1981); see also Mauldin v. Sheffer, 113 Ga. App. 874, 878, 150 S.E.2d 150, 154 (1966) ("[I]f a contract imposes a legal duty upon a party thereto, *which duty exists apart from the specific obligation of the contract*, the neglect of that duty is a tort founded upon a contract. . . . In such a case the liability arises out of the breach of duty incident to and created by the contract, but is only dependent upon the contract to the extent necessary to raise the duty.")

In the instant case, the Network Agreements do not create a relationship between Plaintiffs and Defendants such that the

10

law recognizes a special duty between them. Thus, it cannot be said that a private duty was owed to Plaintiffs by Defendants in this case such that Plaintiffs may assert a cause of action under § 51-1-8.

In Count V, Plaintiffs allege that Defendants committed an invasion of privacy tort, specifically the appropriation of their names for financial gain.[4] Defendants counter that a cause of action for tort cannot arise out of what is essentially a breach of contract claim. See Monroe v. Board of Regents, 268 Ga. App. 659, 602 S.E.2d 219 (2004); Bulmer v. Southern Bell Telephone & Telegraph Co., 170 Ga. App. 659, 317 S.E.2d 893 (1984). Thus, this Court has been called upon to determine whether Plaintiffs' allegations give rise to a contract claim or a tort claim.

To maintain an action in tort there must be a duty from the defendant to the plaintiff and a violation of such duty. Knight v. Atlantic Coast Line R. Co., 4 F. Supp. 713, 714 (S.D. Ga. 1933). At oral argument, Plaintiffs' counsel took the Court through the language of the Network Agreement of

---

[4] In Martin Luther King, Jr., Ctr. for Social Change, Inc. v. American Heritage Products, Inc., 250 Ga. 135, 143, 296 S.E.2d 697, 703 (1982), the Georgia Supreme Court held that the appropriation of another's name and likeness, without consent and for the financial gain of the appropriator, is a tort in Georgia. See also Torrance v. Morris Pub. Group LLC, 281 Ga. App. 563, 636 S.E.2d 740 (2006) (explaining that appropriation is a species of the tort of invasion of privacy); Whisper Wear, Inc. v. Morgan, 277 Ga. App. 607, 627 S.E.2d 178 (2006).

11

Plaintiff Rivell to demonstrate that the provision of Plaintiffs' information to a Non-Payor, like Capella, as opposed to Payors such as insurance companies, was in no way contemplated by the Agreement. For instance, the list of companies, referred to in the Network Agreement as "Company," that are subject to the terms of the Network Agreement and listed in Exhibit A, are all insurance companies. It also states that the "Company . . . is a duly licensed insurance company or is an employer or organization which provides health insurance on behalf of its employees or members and seeks to make health services available to its policyholders, employees or members . . . ." (Ex. to Def. Cappella's Reply Brf.) This type of language throughout the Network Agreements, so the argument goes, demonstrates that the physician's information was not to be used for anything other than insurance services and products since no mention is made of non-insurance services or products such as Medical Discount Cards. The clear import of this non-existent language, Plaintiffs contend, demonstrates that Defendants went far beyond the scope or intent of the Network Agreements when PHCS sold or leased Plaintiffs' information to Capella.[5]

At this point, the Court specifically inquired into the

---

[5] Defendants counter that the Network Agreements granted them the authority to use the names and other provider information as they did.

Plaintiffs' tort claim, asking what duty served as a basis of their claim. The following colloquy took place:

> Plaintiffs' counsel: Under the circumstances, there is a duty on the defendants' part not to use the plaintiffs' name --
>
> Court: And the circumstances that you are referring to, is that the contract?
>
> Plaintiffs' counsel: Well, it's broader than that. They all derive out of relationships that flow from the contract, but . . . the circumstances include, for example, the availability of the doctors' names, discount information, and fee schedules and so forth that they're able to take and present to the public . . . .
>
> . . . .
>
> Court: And the misappropriation that you are alleging is your allegation that the defendants went beyond the usage that you claim was permitted under the contract.
>
> Plaintiffs' counsel: Yes, but another way that I would explain it is this way. If there was no network agreement here . . . and they were using the doctors' names that they obtained off the internet to create their own network to sell medical discount cards, that would be an appropriation of the doctors' names. And we are contending that because they got that information from a contract that existed -- doesn't mean it's a contract case, it's a tort case.

(FTR Recording System at 4:55:30.)[6]

Summarizing their argument then, Plaintiffs deny that the duty owed to them by Defendants arose out of the Network

---

[6] The oral argument of March 13, 2007, has not been transcribed, but the Court is able to listen to the hearing on an audio recording system called For the Record ("FTR") and indicate the time marker of the exchange.

Agreements; indeed, Defendants' conduct in appropriating their names and other information was so far outside the scope of those agreements that it was as if Defendants had simply taken their names from the internet.

The problem with Plaintiffs' argument, however, is that Defendants did not simply take their names from the internet. Instead, Defendants used the very discount information and fee schedules that are the subject matter of the Network Agreements; that is, the "networks" created by the various Network Agreements became the object of appropriation to Capella. Stated another way, but for the networks created by the contractual relationship between PHCS and the physicians, PHCS would have had nothing to sell or lease to Capella. This proposition is evident from the fact that Plaintiffs refer to the Network Agreements and the authority (or lack thereof) granted by the agreements throughout the amended complaint.[7] Also, in reviewing Plaintiffs' arguments in their sur-reply papers, Plaintiffs state that the Network Agreements "do not in any way authorize the assignment of the plaintiffs' network agreements to medical discount card companies or other 'non-payors.' Defendants make general arguments that the plaintiffs consented to the defendants' use of their names,

---

[7] Such reference is made in no less than 16 paragraphs of the amended complaint: ¶¶ 2, 16, 18-19, 21, 23, 26, 29, 31-32, 34-35, 38-39, and 42-43.

without any discussion of the scope of that consent." (Pls.' Reply Brf. In Opp'n to Defs.' Mot. To Dismiss, at 6-7.)

In short, Plaintiffs' tort claim defines Defendants' duty through reference to the scope of Plaintiffs' authority under the Network Agreements, and Defendants allegedly breached their duty when they went beyond the authority granted under the Network Agreements. When the parties argue over the "scope" and "intent" of a contract, it brings to sharp focus the fact that the dispute between them arises out of contract. Accordingly, Plaintiffs' claims arise out of contract, specifically the Network Agreements. Thus, while Plaintiffs may have a claim that Defendants breached the Network Agreements in selling their information to Non-Payors, Plaintiffs have not pled such a claim in the amended complaint. Because a breach of contract claim is the basis of any liability on the part of Defendants, Plaintiffs cannot be heard to state a claim in tort under the same circumstances. See Bulmer, 170 Ga. App. at 660, 317 S.E.2d at 895 ("[A] mere breach of a valid contract amounting to no more than a failure to perform in accordance with its term does not constitute a tort or authorize the aggrieved party to elect whether he will proceed ex contractu or ex delicto." (citations and quoted sources omitted)). Moreover, because any breach of contract claim arises out of the Network Agreements attached to

Defendant Capella's reply brief and thus, the Network Agreements are central to Plaintiff's claim, these documents are properly considered on Defendants' motions to dismiss without converting the motions to summary judgment motions. Accordingly, Defendants' motions to dismiss must be granted because Plaintiffs have failed to state a claim upon which relief may be granted.[8]

## V. CONCLUSION

Upon the foregoing, Defendants' motions to dismiss (doc. nos. 11 and 12) are hereby **GRANTED**. The Clerk is instructed to **CLOSE** this case.

**ORDER ENTERED** at Augusta, Georgia, this 20th day of April, 2007.

HONORABLE LISA GODBEY WOOD
UNITED STATES DISTRICT JUDGE

---

[8] The first three counts of Plaintiffs' amended complaint set forth equitable claims for declaratory judgment, an injunction, and unjust enrichment/constructive trust. Having determined that Plaintiffs' claim should sound in contract, which is a claim not made in this case, there is no present right to the equitable relief sought in the amended complaint.

16